**CROW v. CROW BROS. LAUNDRY CO. et al.**
**(No. 427.)**

Court of Civil Appeals of Texas. Waco.
March 17, 1927.

Rehearing Denied April 14, 1927.

Partnership ⊚⇒242(5)—Agreement, if any, of purchasers of partner's interest in laundry to pay past-due rent to her, held to have been merged in written agreement.

Where wife inherited husband's interest in laundry partnership and in building leased by partnership, and at time of sale of her partnership interest partnership owed rent to her, agreement, if any, of purchasers of her interest in partnership to pay past-due rent, *held*, under evidence, to have been merged in written agreement of purchase, providing that instrument superseded all contracts between parties, and that any contract made between them was canceled and parties released from liability thereunder.

Appeal from District Court, McLennan County; Giles P. Lester, Judge.

Action by Mrs. Inez Crow against the Crow Bros. Laundry Company and others. From a judgment for plaintiff against named defendant only, she appeals. Affirmed.

Spivey & Spivey and John B. McNamara, all of Waco, for appellant.
S. H. Clayton, of Waco, for appellees.

STANFORD, J. Suit by appellant against Crow Bros. Laundry Company and G. W. Barclay and R. L. Barclay, for the sum of $750, being one-half the rent upon a certain building in Waco, a half interest in which building was and is owned by appellant, the other half by Frank Crow, and occupied by Crow Bros. Laundry. The case was tried before the court, and judgment rendered denying appellant any recovery. Appellant excepted to the judgment, gave notice of appeal, and presents the case here upon assignments of error to the action of the court in failing to render judgment in her favor against appellees G. W. Barclay and R. L. Barclay, but makes no complaint of said judgment as to appellee Crow Bros. Laundry Company. The facts will be more fully stated in connection with our disposition of appellant's assignments.

Under several assignments, appellant contends the court erred in rendering judgment in favor of appellees G. W. and R. L. Barclay, because the evidence without dispute showed that the matter of rent and its payment was by agreement, and at the request of the Barclays, not included in the written contract, and that the promise to pay same was a separate agreement, or, if the above facts are not shown by the undisputed evidence, then they are shown by the great preponderance of the evidence. The record discloses that prior to October 5, 1921, Louis Crow and his brother, Frank Crow, owned practically the entire interest in the Crow Bros. Laundry, each owning an equal interest, and that said two brothers owned in equal interests the lots and buildings in which said laundry business was conducted; that Louis Crow died October 5, 1921, leaving a will, which was duly probated, bequeathing all of his property to his wife, Inez Crow, appellant herein; that, at the time of the death of Louis Crow, the business known as the Crow Bros. Laundry was a partnership, composed of Frank Crow, Louis Crow, D. C. Hays, and Harry Bahl. Up to September 1, 1921, said partnership paid or agreed to pay a rental of $200 per month to the said Frank and Louis Crow on the building owned by said parties and occupied by said laundry business. On September 1, 1921, said rent was raised to $250 per month, and so continued until the death of Louis Crow on October 5, 1921. On said date there was $1,500 rent due and unpaid by the Crow Bros. Laundry to Louis and Frank Crow, one-half of which, or $750, by virtue of the will of Louis Crow. became due to appellant, Inez Crow, surviving widow of Louis Crow, and being the same herein sought to be recovered. Harry Bahl withdrew from the partnership in February, 1922, leaving the partners Frank Crow, D. C. Hays, and appellant, Mrs. Inez Crow, widow of Louis Crow, as the partners. On April 16, 1922, D. C. Hays died, and his widow, Mrs. Hays, took his place in the partnership, which continued with Mrs. Hays, Frank Crow, and Mrs. Inez Crow, appellant, constituting said partnership until January 2, 1923, when appellant sold her interest to appellees G. W. and R. L. Barclay, by written contract, the material parts of which are as follows:

"This memorandum of agreement made and entered into in triplicate by and between Mrs. Inez Crow, feme sole, party of the first part, and R. L. Barclay and G. W. Barclay, parties of the second part, witnesseth:

"It is agreed that the party of the first part shall sell, and does hereby sell, to the parties of the second part, all her right, title, and interest in and to the business of the Waco Steam Laundry, Crow Bros. Company, proprietors, not including the building or grounds or any of the realty now owned or held in part or in whole by the said Mrs. Inez Crow, in which said business is now being conducted; and whereas, the parties of the second part have agreed to pay the sum of fifteen thousand ($15,000.00) dollars in the following manner. * * *

"And the parties of the second part further agree and bind themselves to assume all outstanding indebtedness and liabilities of whatsoever nature that by virtue of said business or copartnership said first party is now, or may become liable for in the future; it being agreed that the said party of the first part is hereby released from, and indemnified against, all liability by reason of her previous connection and copartnership interest in said business. * * *

"It is further agreed and understood between

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

all parties hereto that this instrument supersedes all other contracts or agreements heretofore made by any of the parties hereto, and that any contract or agreement so made is now canceled and held for naught, and all parties released from liability thereunder."

There were two contracts entered into; the first known as the Stone contract, dated December 30, 1922, and the second one known as the Clark contract, dated January 2, 1923, from which the excerpts above are copied. In each of said contracts the consideration promised to be paid by the Barclays to Mrs. Crow was $15,000, $5,000 cash and three notes, one for $2,500 and two for $3,750 each. In the last, or Clark contract, a lien was retained on the interest sold by Mrs. Crow to secure the deferred payments, which provision was not in the first contract. The last contract, the one by which the deal was finally closed, also contained the following provision, which was not in the first:

"It is further agreed and understood between all parties hereto that this instrument supersedes all other contracts or agreements heretofore made by any of the parties hereto, and that any contract or agreement so made is now canceled and held for naught, and all parties released from liability thereunder."

The record further shows that by appellant's original petition, filed September 27, 1923, she sought to recover the item of $750 rent solely upon the written contract of date January 2, 1923, alleging that, by the execution and delivery of said contract, appellees became bound and obligated to pay said rent to her. By her amended petition, upon which the case was tried, filed October 17, 1925, she alleged the agreement to pay said rent on the part of appellees the Barclays was not included in said written contract, and was not intended to be so included, but was a separate parol agreement. Both contracts, the one dated December 30, 1922, and the one on which the deal was closed of date January 2, 1923, stated the consideration to be paid by the Barclays to appellant for her half interest in all the property of said partnership was $15,000, which was paid by them in cash and notes. No one contends the Barclays agreed to pay said rent item of $750 as a part of the consideration for said half interest. Both contracts also conveyed to the Barclays a one-half interest in all indebtedness due to said partnership. Appellant testified, in substance, that, during the negotiations leading up to the execution of the written contract, she and R. L. Barclay discussed the matter of the indebtedness and rent, and he asked her to leave this out of the contract and he would see she got the rent, that G. W. Barclay asked her if she would assume her personal account against the rent, and that she told him she had none, and that she certainly would not, etc. Appellant's evidence is sufficient, standing alone, to show that appellees the Barclays agreed to pay or to see that the rent was paid, but these statements appear to have been made before the execution of the contract of January 2, 1923, the one on which the deal was closed, and were dependent upon an audit of the books being made. The appellees the Barclays testified, in substance, that, after the contract of December 30, 1922, was executed, appellant became dissatisfied and threatened to enjoin them, and they told her to see her attorney and have a contract drawn to suit her, and they would settle on that, and that they did so, and that he then insisted that this contract, the one of January 2, 1923, should embrace all of their dealings, and that it did so, and that they did not agree to pay any rent, and no such agreement was intended to be included in said contract. The audit of the books revealed that appellant herself, or as devisee of her deceased husband, was indebted to Crow Bros. Laundry Company, and this indebtedness, deducted from the $750, left a balance in her favor of $125; hence R. L. Barclay, as manager of the Crow Bros. Laundry, some four months after the Barclays had purchased said half interest and become members of the partnership, sent appellant a statement of her account, with a check for $125, the balance due her, and R. L. Barclay testified:

"The books showed that Mrs. Crow's account was an asset to the business. * * * We sent her the statement because that is what the books showed her account to be. * * * The reason I sent that check was because Mrs. Crow had been raising so much disturbance about rent, and we discussed it, and we said: 'Well, she is a widow woman; let's send her the difference in the account according to what the books show and get rid of it'—that's the reason the check was sent."

The final contract evidencing the sale by appellant of her half interest in the Crow Bros. Laundry to appellees G. W. and R. L. Barclay shows clearly that the consideration to be paid to appellant was $15,000, and the further obligation on the part of said appellees of assuming the payment of all indebtedness of the partnership of Crow Bros. Laundry that appellant might be liable for as a member of said firm. In other words, said appellees agreed to pay appellant $15,000 and indemnify her against liability for said firm's indebtedness. The $750 rent claim asserted by appellant was not a claim for which she could become liable, unless she elected to assert a liability by herself against herself. Clearly the contract did not obligate appellees Barclays to pay said claim to appellant. There is no contention by any one that appellees the Barclays agreed to pay said rent claim to appellant as a part of the consideration for her one-half interest in the partnership assets. There is no evidence that the appellees the Barclays made any statement after the execution of the final contract of purchase of January 2, 1923, that could be construed as a promise to pay said claim, and,

if such statements had been made prior to the execution of said contract, same were effectually disposed of by the concluding clause of said contract as above set out. It is clear, as above stated, appellant was not entitled to recover on the written contract. This is admitted by appellant in her pleadings. It is equally clear, if there was any verbal agreement by appellees to pay said rent, such agreement was made prior to the execution of the written contract upon which the deal was closed, and such verbal agreement was superseded and canceled, and all parties released from liability thereunder, by the express provisions of the said written contract. We think the judgment of the trial court is amply supported by the evidence.

We have considered all of appellant's assignments, and, finding no reversible error, affirm the judgment of the trial court.